UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANGELA KAY MCINISH**<br>1106 Midsummer Court<br>Marietta, GA 30068<br><br>**CHRISTINA GAY FIBLE**<br>23639 Sawdon Ridge Road<br>Guilford, IN 47022<br><br>                        *Plaintiffs,*<br><br><br>      v.<br><br>**THOMAS J. ENGELS,** in his official capacity only as Administrator of the **HEALTH RESOURCES AND SERVICES ADMINISTRATION**<br><br>                        *Defendant*. | **COMPLAINT FOR DECLARATORY RELIEF** |

1. Plaintiffs suffered injuries caused by unlicensed COVID-19 vaccines that were quickly developed and produced as part of the Public Readiness and Emergency Preparedness ("PREP") Act. In the event of injury, the PREP Act replaces common law tort remedies with the Countermeasures Injury Compensation Program ("CICP") and precludes direct filing in any court.[1]

---

[1] A complaint alleging "Willful Misconduct," may be filed in the United States District Court for the District of Columbia 42 U.S. Code § 247d-6d(d),(e) only after a CICP claim has been filed.

1

COMPLAINT FOR DECLARATORY RELIEF

2. The Health Resources and Services Administration ("HRSA"), a federal agency within the U.S. Department of Health and Human Services ("HHS"), manages CICP. HRSA only accepts applications for CICP benefits from those who've suffered "serious physical injury or death resulting from the administration of a covered countermeasure."[2]

3. These unlicensed vaccines injured Plaintiffs substantially. Plaintiffs' injuries were not grave enough to satisfy HRSA's minimum CICP application standard, however, since Plaintiffs' injuries were not life-threatening, did not result in permanent impairment of a body function, and did not require medical intervention to preclude such harm. Plaintiffs did not, and could not apply. Justice to remedy their harms is completely out of reach.

4. HRSA's CICP program violates substantive due process and equal protection since Plaintiffs who survive a COVID-19 vaccine injury without "serious physical injury" are left without any remedy.

5. Plaintiffs, therefore, seek a Court Order declaring that CICP is unconstitutional.

**PARTIES**

6. Plaintiff Angela McInish is a resident of Marietta, Georgia. She received two unlicensed Pfizer-BioNTech shots. She received her first shot on March 8, 2021 (lot #EN6205) and her second Pfizer-BioNTech COVID-19 shot on March 29th, 2021 (lot #EP7533). She and her husband decided to get vaccinated so that they could travel. She believed that she was doing the right thing. She was afraid of what was being said about COVID-19 disease and believed that these experimental vaccines were safe and effective, as proclaimed. Even though Angela was bedridden after her first dose (flu symptoms, fever, body aches, and chills), she went in for

---

[2] https://www.hrsa.gov/cicp

COMPLAINT FOR DECLARATORY RELIEF

another injection 21 days later, as instructed. She had renewed, more significant symptoms for 24 hours after her second dose. A couple of weeks later, her ears were ringing, and she began to have heart palpitations, anxiousness, and nervousness. A month-and-a-half later, her hair started falling out. Her face, jaw, and scalp felt like they were on fire. Then, a couple of months later, she had severe insomnia for nearly six months. But this time, the aftermath involved more than just flu-like symptoms. Within the span of two-and-a-half years, she had over 105 doctor appointments to treat her substantial painful symptoms. Her life post-COVID-19 vaccines has been completely transformed. Blood work revealed that she now has an autoimmune disorder. Additionally, she has food allergies, causing her eyes and face to swell up, her hands and feet to grow numb, and she has extremely dry, tight skin. She can't work and now suffers from anxiety and depression. Since the COVID-19 shots, she has been diagnosed with small fiber neuropathy, POTS, MCAS (allergies), and Epstein-Barr. She has difficulty breathing and experiences internal vibrations. Even though she knows that the Pfizer-BioNTech vaccines caused her injuries, none of her doctors will admit it.

7. Plaintiff Christina Fible works at a plant that once supplied ventilator parts to the Ford Motor Company. She received her first Moderna shot on April 6, 2021 (lot # 021B21A). She immediately began experiencing problems such as arm pain and bad headaches. She was told her word loss and clumsiness were not side effects of the vaccines. She received a second Moderna shot on May 12, 2021 (lot # 039B21A). Within 10 days she developed high blood pressure and tachycardia. She was prescribed a heart monitor. The doctors did not acknowledge that this had anything to do with the Moderna vaccines. Additionally, she had pain in her pelvis, tremors, numbness in her legs and couldn't drive. For three months, she had frequent urination, and lost 17 pounds. She could not lie down and could not sleep. She had to sit upright for three months.

Even though she reported her injury to VAERS, her doctors would not accept that the vaccines caused her injuries.

8. Defendant Thomas J. Engels is the Administrator of HRSA. He is sued in his official capacity only. HRSA is a sub-agency within the United States Department of Health and Human Services, and is headquartered in North Bethesda, MD. Among its many duties, HRSA compensates individuals judged to be harmed by vaccines and other countermeasures.

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) as this action arises under the Constitution and laws of the United States, including the Fifth Amendment to the United States Constitution.

10. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act).

11. Venue is proper in this District under 28 U.S.C. § 1391(e)(1)(A) since Defendant is an officer of HRSA sued in his official capacity. HRSA is a sub-agency of HHS, which maintains its headquarters in Washington, D.C.

**STANDING**

12. Plaintiffs have standing. They suffered substantial vaccine injuries. While the injuries have subsided somewhat from their zenith, Plaintiffs remain impaired and have no access to any remedy because their injuries, while significant, do not meet the statutory threshold for CICP. They seek declaratory relief since they are still, by law, unable to access the courts and cannot apply to CICP due to HRSA's unconstitutional qualification constraints. Plaintiffs ask this court

to declare HRSA's CICP program in violation of Plaintiffs' due process and equal protection rights to seek compensation for their injuries under the Fifth Amendment.

13. Plaintiffs can show "(i) that they suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that those injuries were likely caused by the defendant; and (iii) that those injuries would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Plaintiffs also "satisfy [their] burden at the pleading stage, a[s they can] 'clearly allege facts demonstrating each element'" of standing. (see *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Plaintiffs can demonstrate standing for each claim and form of relief that is sought." (See *Town of Chester v. Laroe Ests., Inc.*) 581 U.S. 433, 439 (2017), (cleaned up). Plaintiffs' case is properly before the Court. This Court has inherent equitable powers to remedy breaches of constitutional rights. (See *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 9-10 (2012).

**LEGAL BACKGROUND**

14. The PREP Act takes away the right to sue. "Immunity applies to any "covered person"[3] for all "claims for loss" caused by, arising out of, relating to, or resulting from the "administration" or the "use" of a "covered countermeasure," if "a declaration has been issued with respect to that countermeasure.""[4] The PREP Act authorizes the HHS Secretary to grant (until December 31, 2029)[5] "covered persons"[6] immunity from suit and liability for injury as follows:

---

[3] https://www.law.cornell.edu/uscode/text/42/247d-6d#i_2
[4] 42 U.S. Code § 247d-6d (a)(1)
[5] https://www.federalregister.gov/documents/2024/12/11/2024-29108/12th-amendment-to-declaration-under-the-public-readiness-and-emergency-preparedness-act-for-medical
[6] 42 USC § 247d-6d(i)(2)

**Loss**

(2) Scope of claims for loss (A) Loss For purposes of this section, the term "loss" means any type of loss, including— (i) death; (ii) physical, mental, or emotional injury, illness, disability, or condition; (iii) fear of physical, mental, or emotional injury, illness, disability, or condition, including any need for medical monitoring; and (iv) loss of or damage to property, including business interruption loss. Each of clauses (i) through (iv) applies without regard to the date of the occurrence, presentation, or discovery of the loss described in the clause. (B) Scope The immunity under paragraph (1) applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure.[7]

15. According to HRSA, when public health emergencies and security dangers threaten our country, the government supports the development of covered countermeasures such as vaccines, medications, devices, or other items used to prevent, diagnose, or treat a public health emergency or a security threat.[8]

16. During the COVID-19 emergency when Plaintiffs received COVID-19 vaccines, those covered countermeasures were not, and were not required to be licensed. According to the U.S. Government Accountability Office, "Operation Warp Speed was a federal effort that supported multiple COVID-19 vaccine candidates to speed up development."[9] The FDA explains this rushed process:

---

[7] 42 USC § 247d-6d(a)(2)
[8] https://www.hrsa.gov/cicp#:~:text=Occasionally%2C%20public%20health,rare%20and%20mild.
[9] https://www.gao.gov/products/gao-21-319#:~:text=Operation%20Warp%20Speed%20was%20a%20federal%20effort%20that%20supported%20multiple%20COVID%2D19%20vaccine%20candidates%20to%20speed%20up%20development.

An Emergency Use Authorization (EUA) is a mechanism to facilitate the availability and use of medical countermeasures, including vaccines, during public health emergencies, such as the current COVID-19 pandemic. Under an EUA, FDA may allow the use of unapproved medical products, or unapproved uses of approved medical products in an emergency.[10]

17. However, when something goes wrong, and would-be plaintiffs suffer injury, the PREP Act precludes suit or liability against a covered person[11] for damages "caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure."[12]

The PREP Act's preemption provision states (in part):

During the effective period of a declaration under subsection (b), or at any time with respect to conduct undertaken in accordance with such declaration, no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that—

(A) is different from, or is in conflict with, any requirement applicable under this section;[13]

18. Traditional tort remedies are replaced by the CICP that HRSA manages – the federal government's no-fault administrative claims process for "eligible individuals" who can prove causation. Although the PREP Act precludes all suits, CICP only accepts applications and exclusively compensates, at least in theory, death or serious physical injury:

---

[10] https://www.fda.gov/vaccines-blood-biologics/vaccines/emergency-use-authorization-vaccines-explained#:~:text=Under%20an%20EUA%2C%20FDA%20may%20allow%20the%20use%20of%20unapproved%20medical%20products%2C%20or%20unapproved%20uses%20of%20approved%20medical%20products%20in%20an%20emergency

[11] 42 USC § 247d-6d(i)(2)

[12] https://www.law.cornell.edu/uscode/text/42/247d-6d#:~:text=caused%20by%2C%20arising%20out%20of%2C%20relating%20to%2C%20or%20resulting%20from%20the%20administration%20to%20or%20the%20use%20by%20an%20individual%20of%20a%20covered%20countermeasure

[13] https://www.justice.gov/sites/default/files/opinions/attachments/2021/01/19/2021-01-19-prep-act-preemption.pdf

> The term "serious physical injury" means an injury that— (A) is life threatening; (B) results in permanent impairment of a body function or permanent damage to a body structure; or (C) necessitates medical or surgical intervention to preclude permanent impairment of a body function or permanent damage to a body structure.[14]

19. According to HRSA, "[CICP] provides compensation for covered injuries or deaths that occur as a result of the administration or use of certain countermeasures." "Compensation may include unreimbursed medical expenses (expenses that health insurance did not cover), lost employment income, and the survivor death benefit."[15]

20. HRSA categorizes serious physical injuries as "rare"[16] injuries. The vast majority – those who don't suffer a "serious physical injury" or death – do not meet HRSA's minimum injury bar and are left without any recourse.

21. Currently, at the fifth anniversary of the COVID-19 vaccine rollout, the HRSA has compensated 42 applicants out of 14,046 (as of December 1, 2025).[17] The mean payout is approximately $4,000.

22. But HRSA's parsimony pales in comparison to the fact that Plaintiffs, along with an estimated 1.5 million[18] others, aren't even eligible to apply since their injuries were not fatal or

---

[14] 42 USC § 247d-6d(i)(10)
[15] https://www.hrsa.gov/cicp/filing-process#:~:text=The%20Countermeasures%20Injury,survivor%20death%20benefit.
[16] On the rare chance you suffered a serious injury, or the death of a loved one, from the administration or use of a covered countermeasure, you may be eligible to file a claim for benefits. https://www.hrsa.gov/cicp#:~:text=On%20the%20rare%20chance%20you%20suffered%20a%20serious%20injury%2C%20or%20the%20death%20of%20a%20loved%20one%2C%20from%20the%20administration%20or%20use%20of%20a%20covered%20countermeasure%2C%20you%20may%20be%20eligible%20to%20file%20a%20claim%20for%20benefits.
[17] https://www.hrsa.gov/cicp/cicp-data
[18] https://openvaers.com/covid-data

COMPLAINT FOR DECLARATORY RELIEF

eligible to be categorized as "serious physical injuries." HRSA provides Plaintiffs and the many others similarly situated with no recourse.

23. HRSA's CICP parameters are unconstitutional since Plaintiffs, along with those who would otherwise be able to bring suit in a court of law, are deprived of that right since suing for willful misconduct first requires filing a CICP application in the sole permitted venue (D.C. District Court). Since Plaintiffs' less-than-serious physical injuries don't meet HRSA's injury standard to file a CICP application, they fall within a classic Catch-22: they have no access to justice.

## COUNT I

## SUBSTANTIVE DUE PROCESS VIOLATION
### (Facial and As-applied)

24. Plaintiffs reincorporate the foregoing paragraphs as if fully set forth herein.

25. HRSA forecloses compensation to Plaintiffs even though they've suffered substantial injuries. HRSA's CICP replaces Plaintiffs' fundamental right to bring common law causes of action for medical malpractice, products liability, battery, negligence, and fraud. For Plaintiffs, and others similarly situated, HRSA cuts off any possibility of an administrative as well as judicial remedy.

26. There is no compelling government interest for HRSA to enforce its stated policy to bar common law tort remedies and subvert constitutional rights with a system designed to exclude the vast majority of those injured.

27. Since Plaintiffs did not suffer "serious physical injury," HRSA's CICP abolishes their administrative, statutory, judicial, and common-law rights to be made whole. HRSA's CICP program deprives Plaintiffs of their 5th Amendment right to due process. No alternative remedy exists.

28. Plaintiffs meet all three requirements to allege a violation of due process. First, their private interests are affected by HRSA's official action since CICP allows no recourse for their injuries; second, HRSA's deprivation of due process rights without procedural safeguards to assure even the possibility of recourse is unconstitutional; and lastly, HRSA would not be unduly burdened by permitting Plaintiffs who've suffered less than "serious physical injuries" to apply. (See *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976))

29. The Fifth Amendment to the U.S. Constitution provides (in pertinent part): "No person shall be… deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

30. HRSA unlawfully extinguishes all existing state and federal causes of action. HRSA's inaccessible CICP program forecloses all Plaintiffs' remedies; this is an unconstitutional taking in violation of the 5th Amendment since a "legal cause of action" is a "compensable property interest" under the Takings Clause. *Alliance of Descendants of Tex. Land Grants v. United States*, 37 F.3d 1478, 1481 (Fed. Cir. 1994).

31. HRSA cannot provide legal justification for excluding Plaintiffs from participating in CICP. HRSA does not provide any substitute after taking away all judicial and administrative remedies.

32. Plaintiffs have suffered diminished quality of life as a result of COVID-19 vaccines. The rights to bodily autonomy and to be free of physical harm from others are deeply rooted in our nation's history and implicit in the concept of ordered liberty. See *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (The Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests.")

33. HRSA's shutting out all recourse for Plaintiffs cannot be rationally related to a permissible government objective.

34. Therefore, HRSA deprives Plaintiffs of their Fifth Amendment right to substantive due process both facially and as applied.

35. Since no other remedy at law exists, declaratory relief is the only avenue to resolve this controversy.

## COUNT II
## VIOLATION OF EQUAL PROTECTION

36. Plaintiffs reincorporate the foregoing as if fully set forth herein.

37. HRSA has violated Plaintiffs' right to equal protection under the law by denying them any compensation process for their substantial injuries.

38. The Equal Protection Clause of the United States Constitution requires government entities to treat all similarly situated persons alike. (U.S. Const. amend. V., U.S. Const. amend. XIV § 1.)

39. Plaintiffs have suffered physical injuries that HRSA deems not serious enough to require any remedy.

40. Defendant cannot meet his burden to prove "an exceedingly persuasive justification" for denying equal protection to Plaintiffs to show that discriminating against them: (1) serves important governmental objectives, and (2) is substantially related to Plaintiffs' claim that Defendant violated their right to equal protection under the law.

41. There is no "exceedingly persuasive justification" for HRSA to exclude only those with less than serious bodily injury from CICP without a just substitute.

42. The Equal Protection Clause of the United States Constitution (U.S. Const. amend. V, U.S. Const. amend. XIV § 1.) requires government entities to treat all similarly situated persons alike – in this case, all those who've been injured by COVID-19 vaccines. HRSA arbitrarily removes Plaintiffs' constitutionally guaranteed right to seek redress that it affords others. There is no rational basis for this arbitrary discrimination.

43. Since no other remedy at law exists, declaratory relief is the only avenue to resolve this controversy.

**PRAYER FOR RELIEF**

Plaintiffs ask this court to:

i)   Declare that HRSA's CICP payment program, including but not limited to 42 U.S.C. § 247d-6e, is unconstitutional under the Fifth Amendment both facially and as applied to Plaintiffs;

ii)  Declare that HRSA's CICP payment program violates the equal protection clause (U.S. Const. amend. V, U.S. Const. amend. XIV § 1.);

iii) Issue an ORDER compelling HRSA to make the CICP application process available to Plaintiffs;

iv) Enjoin the Defendant from taking any further actions to implement the CICP in a manner inconsistent with the U.S. Constitution;

v) Declare that CICP is unconstitutional for the reasons described herein;

vi) Declare that the Defendant's actions in implementing CICP violate the U.S. Constitution;

vii) Award attorney fees and costs;

viii) Order any other appropriate relief as provided by law and equity.

DATE: December 22, 2025

Signed /s/ Ray L. Flores II
RAY L. FLORES II, Attorney at Law
Torrey Reserve North Court
11622 El Camino Real Suite 100
San Diego, CA 92130
California State Bar Number: 233643
D.C. District Court I.D. No.: CA00173
Phone: (858) 367-0397
FAX: (888) 336-4037
Email: rayfloreslaw@gmail.com

COMPLAINT FOR DECLARATORY RELIEF